1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
2                          **MIAMI DIVISION**
3                  **CASE NUMBER 18-20729-CR-MORENO**
4
**UNITED STATES OF AMERICA,**
5                                              **Courtroom 12-2**
                Plaintiff,
6                                              **Miami, Florida**
        vs.
7                                              **November 9, 2021**
**MICHAEL MORA,**
8
                Defendant.
9  ═══════════════════════════════════════════════════
10           **SUPERVISED RELEASE VIOLATION HEARING**
          **BEFORE THE HONORABLE FEDERICO A. MORENO**
11           **SENIOR UNITED STATES DISTRICT JUDGE**
12 ═══════════════════════════════════════════════════
   **APPEARANCES:**
13
   **FOR THE GOVERNMENT:**      **MARC S. ANTON, AUSA**
14                          United States Attorney's Office
                            500 East Broward Boulevard
15                          Suite 700
                            Ft. Lauderdale, Florida 33394
16                                              954-660-5096
                                            Fax: 954-356-7230
17
   **FOR THE DEFENDANT:**       **ERIC M. COHEN, AFPD**
18                          Federal Public Defender's Office
                            150 West Flagler Street
19                          Suite 1700
                            Miami, Florida 33130
20                                              305-530-7000
                                            Fax: 305-536-4559
21
   **REPORTED STENOGRAPHICALLY**
22 **BY:**                     **GILDA PASTOR-HERNANDEZ, RPR, FPR, FPR-C**
                            Official United States Court Reporter
23                          Wilkie D. Ferguson Jr. U.S. Courthouse
                            400 North Miami Avenue, Suite 12-2
24                          Miami, FL  33128      305-523-5118
                            gphofficialreporter@gmail.com
25

**TABLE OF CONTENTS**

Page

Reporter's Certificate ..................................... 35

**EXHIBITS**

| Exhibits | Marked for Identification | | Received in Evidence | |
|---|---|---|---|---|
| Description | Page | Line | Page | Line |

(None)

Supervised Release Violation Hearing

1        (The following proceedings were held at 10:00 a.m. outside

2   the presence of the defendant:)

3            THE COURT:  18-20729-Criminal, United States versus

4   Michael Mora.  On behalf of the Government.

5            MR. ANTON:  Good morning, Your Honor.  Marc Anton on

6   behalf of the United States.

7            THE COURT:  On behalf of the defendant.

8            MR. COHEN:  Good morning, again.  Eric Cohen, Assistant

9   Federal Public Defender, on behalf of Mr. Mora who needs to be

10  brought out by the marshals.

11           THE COURT:  Yeah, they'll bring him out.  They like to

12  do it one by one.

13           On behalf of the probation officer, who do we have?

14           1ST PROBATION OFFICER:  Good morning, Your Honor.

15  Betty Mendez-Aponte.

16           2ND PROBATION OFFICER:  Good morning, Your Honor.

17  Norma Martinez-Lopez.

18           THE COURT:  Thank you.

19           I assume you're all vaccinated.  If you are and you

20  wish to take off your mask, you can.  If you wish to keep it on,

21  you can.  It's whatever you want.

22           What's your client going to do, Mr. Cohen?

23           MR. COHEN:  He's going to admit, Your Honor.

24           THE COURT:  What is going to be the probation officer's

25  recommendation?  What's the prosecutor's recommendation?

Supervised Release Violation Hearing

4

1        MR. ANTON:  Judge, the prosecution is going to

2   recommend three years of jail and no supervision to follow.

3        MR. COHEN:  Three months.

4        MR. ANTON:  Yeah, I'm sorry, three months.  Did I say

5   three years?  Three months of jail and no supervision to follow.

6        MR. COHEN:  That's a joint recommendation, Your Honor.

7      (The defendant entered the courtroom.)

8        THE COURT:  What say the probation officer?

9        2ND PROBATION OFFICER:  We recommend the middle term,

10   that is six months, without supervision to follow, Your Honor.

11        THE COURT:  And what?

12        2ND PROBATION OFFICER:  With no supervision to follow.

13        THE COURT:  You're tired of him.

14        2ND PROBATION OFFICER:  He's almost expired in March,

15   on March 27.

16        THE COURT:  Now, in State Court he has a November 30th

17   trial date, doesn't he?

18        MR. COHEN:  Yes, Your Honor.  So whatever sentence --

19   if Your Honor adopts the recommendation by at least the

20   Government and defense, he will not be able to make that.  I'm

21   sure a bench warrant will be issued and then once he's done with

22   the sentence, Your Honor --

23        THE COURT:  Well, a bench warrant shouldn't be issued

24   except as a hold if someone tells the Public Defender or --

25        MR. COHEN:  And we will, but yes.  He won't be

Supervised Release Violation Hearing

1   released, I think is my point, and he'll have to wait to be

2   transported over to State custody for resolution of that case.

3            THE COURT:  And what's he going to do?

4            MR. COHEN:  I haven't spoken to him about the State

5   case.

6            THE COURT:  Well, he's right here.  Why don't you ask

7   him.

8            MR. COHEN:  I don't know what the offer is in State

9   Court.  So I can't advise him as to what I would recommend.

10           THE COURT:  It's a misdemeanor.

11           Mr. Mora, how are you?

12           THE DEFENDANT:  Good, and you?

13           THE COURT:  Okay.  Probably better than you.

14           All right.  You are charged with violating the

15   conditions of supervised release because you committed the

16   offense of mischief in excess of $200 on August 25th and

17   resisting an officer without violence.  You are entitled to have

18   a hearing where the prosecutor through the probation officer

19   would have to prove that to me, but your lawyer says that you

20   worked out a deal where everybody recommends three months and

21   maybe supervised release afterwards, though the probation

22   officer says give him six months and no supervised release

23   because she thinks you probably wouldn't make it anyway.  She

24   doesn't say that, but I can read minds, and that's basically it.

25           Do you want to have a hearing where it gets contested

Supervised Release Violation Hearing

1  or do you wish to admit?  Do you admit or deny these

2  allegations?

3           THE DEFENDANT:  Admit.

4           THE COURT:  Okay.  Raise your right hand as much as you

5  can.

6      (The defendant was sworn in by the Court.)

7           THE DEFENDANT:  Yeah.

8           THE COURT:  Okay.  Lower your hand.  Tell me your name

9  and your age.

10          THE DEFENDANT:  Michael Mora, 38.

11          THE COURT:  It says here that you committed these

12  offenses on August 25th.  Do you admit to that?

13          THE DEFENDANT:  Yep.

14          THE COURT:  Are you under the influence of anything?

15          THE DEFENDANT:  No.

16          THE COURT:  You're happy with your lawyer?

17          THE DEFENDANT:  Yes.

18          THE COURT:  What say the prosecutor?

19          MR. ANTON:  Judge, the guidelines in this particular

20  case are three to nine months.  We have no objection to Your

21  Honor sentencing the defendant to the low end of the guideline

22  range at three months, and we'd ask that Your Honor terminate

23  his supervision with no supervision to follow.

24          THE COURT:  So you agree with the probation officer

25  except she wants six months.

Supervised Release Violation Hearing

1          MR. ANTON:  That's correct.

2          THE COURT:  Mr. Cohen, you think your client is going

3    to make it through supervised release and will not be here in

4    the future?

5          MR. COHEN:  Your Honor, I'm hopeful based on his

6    history prior to this violation.  I think he's been in

7    supervision for a period of about two years, maybe a little bit

8    more, without violation.  Also, there's an expectation that if

9    he is brought over or when he is brought over to State Court, he

10   may get a period of supervision there and they may be better

11   able to handle someone with Mr. Mora's issues.

12         THE COURT:  Really?  You think the State Probation

13   Office is better than the Federal Probation Office?

14         MR. COHEN:  I do not think that at all, but I think

15   they deal with issues having to do with mental health far more

16   frequently.

17         THE COURT:  He has a mental health problem?

18         MR. COHEN:  He had in the past.

19         THE COURT:  Are you understanding what's going on

20   today?

21         THE DEFENDANT:  Yes.

22         THE COURT:  What are you doing today in front of me?

23         THE DEFENDANT:  We came to an agreement.  It was about

24   three months, no probation, and that's what this meeting was

25   about.

Supervised Release Violation Hearing

1          THE COURT:  Well, it's not like in State Court.  I

2     don't have to go along with the agreement.

3          THE DEFENDANT:  Oh, I know.

4          THE COURT:  Do you understand?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Federal Court judges don't plea bargain.

7          THE DEFENDANT:  I know.

8          THE COURT:  I didn't even plea bargain in State Court

9     31 years ago and I survived four years.  Isn't that incredible

10    that you can do that?  Worked my butt off, though, if I can say

11    that.  Sorry, Gilda.

12          What are you going to do when you get out?  You're

13    going to get in a fight?

14          THE DEFENDANT:  Negative.  No, no fights.

15          THE COURT:  Well, see, if you get into a fight or

16    something happens, you get to come before me, unless I go retire

17    or meet the ultimate judge.

18          You've met more judges than I do at a judicial

19    conference.

20          THE DEFENDANT:  Yeah, no fights.

21          THE COURT:  Where are you going to work?

22          THE DEFENDANT:  I like the logistics business.  That's

23    pretty much what I like.

24          THE COURT:  What does that mean?  I don't know what

25    logistics -- I mean, I know what logistics is, but in your case.

Supervised Release Violation Hearing

1    THE DEFENDANT:  Inbound, outbound shipping, you know,

2 freight.

3    THE COURT:  I know, but sometimes you can get into

4 trouble depending on what you ship, see?

5    THE DEFENDANT:  Yeah, no, not me.

6    THE COURT:  I know you're smiling right through the

7 mask.  You can't mask anything.

8    The issue is, do we keep him on supervised release or

9 not?

10    If I were to give you a choice of no supervised release

11 but more time, which is what the probation officer is

12 suggesting, six months but no supervised release, would you

13 prefer that over less time, three months but supervised release

14 where they keep you with a little bit of rope hanging around

15 your neck?

16    THE DEFENDANT:  How long would the supervised release

17 be?

18    THE COURT:  Look at that.  See, he's intelligent.  He

19 doesn't need any mental health treatment, I'll tell you that.

20 See?

21    How long do you think you could do?

22    THE DEFENDANT:  No, because it was due till March.

23    THE COURT:  I know, see?  Most people mess up early.

24 Some people mess up towards the end.

25    How much supervised release can I give him?

1          I can give him two years minus whatever time he's done

2    in jail.  So if I were to give him six months, that means I

3    could give him a year and a half supervised release.  Would you

4    agree?

5          1ST PROBATION OFFICER:  He can do up to three years

6    minus time of imprisonment on supervised release.

7          THE COURT:  Up to three years he can do that?

8          1ST PROBATION OFFICER:  Yes.  However, it is our

9    recommendation that he not be given supervised release.

10         THE COURT:  Use the mic.  Court reporters love mics

11   because she has to take every word.  It's hard.

12         1ST PROBATION OFFICER:  Because he did not comply.

13   He's had multiple issues throughout the term of supervised

14   release.

15         THE COURT:  And you brought them up to me?

16         1ST PROBATION OFFICER:  No, it didn't come to that

17   point, but he would take off on his -- he had problems at home.

18   He was living with his mom.  They had multiple issues.  The mom

19   would contact our office, ask that we take him out of the house,

20   things that were not in the power of the probation office.  We

21   can't evict people.  That's not, you know, what we do.

22         There's been ongoing issues with his compliance.  You

23   know, it's stuff that didn't get to the point of notifying Your

24   Honor because we were able to handle it at our level, but he's

25   not a good candidate for supervision because he's not stable,

Supervised Release Violation Hearing

1   and then we can't have him return at this moment to the

2   residence where he's at, where he was living at with his mom

3   because she doesn't want him and the victim in this crime is the

4   next-door neighbor who is a retired FBI agent.

5          Right now it is not a situation we can place him at.

6   He's not willing to cooperate with supervised release.  He's not

7   willing to do as the probation office asked.

8          Before we got to this point, we gave him multiple

9   options, including a halfway house and he refused.  We actually

10  told him to go to a homeless shelter.  He refused.  So we don't

11  think --

12          THE COURT:  Where are you going to live when you get

13  out?

14          Thank you.  I didn't mean to be rude and interrupt.

15          THE DEFENDANT:  I'm going to go back home.

16          THE COURT:  Back home where?

17          THE DEFENDANT:  To my house.

18          THE COURT:  Whose house is it?

19          THE DEFENDANT:  My mom's.

20          THE COURT:  How old are you?

21          THE DEFENDANT:  38.

22          THE COURT:  You know, I know because I have the same

23  ethnic background as you, and I know that -- and it's happening

24  beyond Hispanics, but we kind of love to have our kids with us

25  for a long time.  It's normal, I guess, based upon our culture,

1    but there comes a time when we have to let go as parents, and,

2    you know, I've struggled with that and I suspect your mom has,

3    too.  At 38 it's probably a pretty good time to kind of be on

4    your own.  What do you think?  You think I'm right?

5                THE DEFENDANT:  I know, but I mean, I can't live on the

6    street.

7                THE COURT:  No, you can't live on the street.

8                THE DEFENDANT:  I've got to save up.

9                THE COURT:  Well, how about getting a job?

10               THE DEFENDANT:  That's what I'm going to do.

11               THE COURT:  Well, what was the last job you had?

12               THE DEFENDANT:  Logistics.

13               THE COURT:  Logistics.  Carrying packages.  And who's

14   going to offer you a job now?

15               THE DEFENDANT:   Well, I apply on Craigslist.

16               THE COURT:  I'm sorry?

17               THE DEFENDANT:  I apply on Craigslist.

18               THE COURT:  Okay.  On Craigslist you apply.  Let me

19   tell you -- no, I know everything is on Craigslist.  One of

20   these days they'll even have judicial vacancies.  Maybe they

21   should do that since it's been around -- when did I announce?

22   February, a year ago.  So apparently it needs to be encouraged

23   somehow or other.

24               I read and I see signs that everybody needs workers and

25   you'd be surprised.  It used to be that no one wanted to hire

1  felons.  They want to hire anybody, particularly in logistics

2  and other things like that.  Servers.  The minimum wage is

3  higher.  And apparently you don't get along with your neighbor

4  who happens to be a retired FBI agent.  You know, sometimes who

5  your neighbor is -- you've got to love your neighbor, but at

6  least you've got to get along and not fight with the neighbor.

7         THE DEFENDANT:  That was a one-time thing.

8         THE COURT:  A one-time thing.

9         THE DEFENDANT:  Yeah, he's been my neighbor for about

10  20 years.

11         THE COURT:  Look at that.  I've got two probation

12  officers who are struggling beyond their mask, and they want to

13  tell me this has been going on and on and on.  They didn't bring

14  it up to the judge because it wasn't a strict violation of the

15  law, though it was -- did something happen in State Court or

16  not?

17         1ST PROBATION OFFICER:  No.

18         THE COURT:  No, it didn't even reach that level.

19         1ST PROBATION OFFICER:  No, Your Honor, he was never --

20         THE COURT:  They think it's going to happen again or

21  something worse can happen, see?  And then we're going to lose a

22  lot of sleep over that.  What do we do?  So I don't know.

23         See, I'm not an enthusiastic supporter of CARE Court,

24  but look what I'm doing.  I'm kind of doing a tough CARE Court.

25  They don't even want that, right?  Do you ever participate in

```
 1   CARE Court with Judge Seitz?

 2             1ST PROBATION OFFICER:  Yes.

 3             THE COURT:  You do?

 4             1ST PROBATION OFFICER:  I don't regularly, but I have

 5   been.

 6             THE COURT:  And what do you think Judge Seitz would do?

 7             1ST PROBATION OFFICER:  I'm going to skip that

 8   question.

 9             THE COURT:  You can invoke The Fifth.  All right.

10   That's fair enough, because she believes everybody is

11   redeemable, which is nice.  I should, too.

12             Well, I do what I shouldn't do, my colleagues tell me,

13   and that is think aloud.  Obviously, I'm afraid of what could

14   happen, right, which means you should put someone on supervised

15   release to make sure it doesn't happen or there are some

16   sanctions for it.  By the same token, probation has done all

17   they can do for you.  There's nothing else that they can do for

18   you.  You don't even have the typical -- he doesn't have a drug

19   problem, right?

20             2ND PROBATION OFFICER:  No.

21             THE COURT:  See, I don't think we can resolve our

22   problems as easily as a lot of social workers think, just test

23   him more and go to more classes.  It's a lifetime struggle, but

24   you don't even have that.

25             So what do you think his problem is, Mr. Cohen?
```

1      MR. COHEN:  Your Honor, having spoken with his mother,

2  I think the problem --

3      THE COURT:  You have or have not?

4      MR. COHEN:  I have.

5      THE COURT:  Okay.

6      MR. COHEN:  I think the problem there is she does not

7  approve of some of Mr. Mora's religious beliefs, and that's

8  creating ongoing tension between them.

9      THE COURT:  Well, I don't usually get into religion,

10  but since you brought it up, what is the different religions of

11  the two of them?

12      MR. COHEN:  Mr. Mora goes to a Babalawo.  Mr. Mora's

13  mother believes that he is associating with the devil, and that

14  is, I think, the root of their misunderstanding.

15      THE COURT:  And Mr. Mora's mother is a Catholic?

16      THE DEFENDANT:  Jehovah's Witness.

17      THE COURT:  A Jehovah's Witness.  Okay.  Yeah, that's a

18  bigger gap.  Well, you know, there are good people in all

19  faiths, and if everybody practiced their faith, I could work on

20  my civil cases.  Maybe I wouldn't even need a civil case.

21      What are we going to do?

22      1ST PROBATION OFFICER:  Your Honor, the issue is that

23  Mr. Mora has a mental health issue.  However, he is not --

24      THE COURT:  Has a what?

25      1ST PROBATION OFFICER:  Has a mental health issue.

Supervised Release Violation Hearing

1          THE COURT:  What do you think it is?

2          1ST PROBATION OFFICER:  The last time he was diagnosed

3   with unspecified psychosis.  He has been Baker Acted several

4   times, and he's just not complying with medication.  When he

5   does not comply with his medication, he becomes erratic.

6          THE COURT:  He does dumb things.

7          1ST PROBATION OFFICER:  And becomes aggressive.

8          THE COURT:  Have you been taking your medication while

9   you're in jail?

10         THE DEFENDANT:  I haven't taken medication in over a

11  year.  They stopped that a long time ago.  Like two years ago

12  they stopped it.  I went to Compass Health --

13         THE COURT:  Are you vaccinated?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Okay.  If you want, you don't have to, but

16  it's easier if you talk without a mask, but it's up to you.  I

17  don't force people to do that.

18         THE DEFENDANT:  I mean, they took me off of that like

19  two years ago.

20         THE COURT:  Okay.  So what do you think?  Why don't you

21  get along with the probation officer?  What do you want me to do

22  with you?

23         THE DEFENDANT:  I get along with the probation officer.

24         THE COURT:  Your mom and you do not get along, which

25  now I'm glad your lawyer told me that.  You know, you have the

Supervised Release Violation Hearing

1    right to practice your own faith, and that was done right here

2    in this courthouse that went all the way to the Supreme Court

3    with Judge Spellman.

4          Did you know Judge Spellman, Mr. Cohen?

5          MR. COHEN:  Briefly.

6          THE COURT:  Huh?

7          MR. COHEN:  Briefly.

8          THE COURT:  Briefly.  You can all go to the attorney's

9    lounge on the 14th floor and see his portrait and the attorney's

10   room that I had done.  He's the one who did the case that allows

11   sacrifice by people who believe in Santeria, you know, with

12   limitations.  You can't do it in the courtroom like I've had

13   done during some trials.  I have to write a book one day.  But

14   your mom has a right to be a Jehovah's Witness, and they're

15   pretty strict, too.

16         So you're not going to get along.  Even if you all

17   practice the same faith, it's probably tough for a mother --

18   does she work outside of the home?

19         THE DEFENDANT:  No.

20         THE COURT:  How old is she?

21         THE DEFENDANT:  And I don't practice anything in the

22   home.

23         THE COURT:  I know, but she probably -- you know how

24   mothers are.  They want their sons to be good like they are and

25   that creates issues in every family.

1          So you've got to find a different place.

2          THE DEFENDANT:  I know.  I mean, I will eventually, but

3   I have to save up.

4          THE COURT:  Well, see, the probation office, if I put

5   you on supervised release, they can find housing for you.  This

6   is taking longer than I expected.  Halfway houses are kind of

7   so-so, because they're full of people who have committed crimes

8   like you.  So sometimes people do things in the halfway house

9   that they shouldn't do.  So I understand that.  I'm not devoid

10  of reality.

11         Homeless shelters, they tell you what to do, right, but

12  you could do that.  It's better than living on the streets, no?

13  I mean, I know a lot about that.  I had the homeless case.  I

14  think it's a lot better than sleeping on the streets.  Why don't

15  you want to do that?

16         THE DEFENDANT:  I've lived at my house the entire time.

17         THE COURT:  But your mother doesn't want you to live at

18  her house.

19         THE DEFENDANT:  No, she said I could live there.  She

20  didn't say I couldn't.

21         THE COURT:  Does she speak English, your mom?

22         THE DEFENDANT:  Yeah.

23         THE COURT:  Do you know her phone number?

24         THE DEFENDANT:  Yeah.

25         THE COURT:  You know, so many mothers come through no

1   matter what.

2           What's her number?  Shirley, let's dial her up.

3           Give me the number.

4           Your lawyer is whispering into your ear.  See, this

5   judge will call your bluff.

6           MR. COHEN:  Your Honor --

7           THE COURT:  That's probably what he said.

8           You don't have to tell me what you said.

9           MR. COHEN:  No, I have no problem.

10          THE COURT:  But you spoke with the mom?

11          MR. COHEN:  I spoke with the mom Friday.  It may have

12  been since Mr. Mora spoke with her last, but she told me that

13  her preference is that he not live --

14          THE COURT:  That's normal.  I wouldn't fault her.  Even

15  moms -- That's why I usually don't have moms testify at

16  sentencings.

17          MR. ANTON:  And Judge, I spoke with the sister also

18  yesterday with the mom in the background.

19          THE COURT:  She lives at the home?

20          MR. ANTON:  And she reiterated that she also, on behalf

21  of mom, did not want Mr. Mora back in the residence.

22          THE COURT:  Is she a Jehovah Witness, too?

23          MR. ANTON:  That I did not ask.

24          THE COURT:  The third religion.  You know, I'm going to

25  get that bumper sticker that I see that has everything, but it

1   doesn't probably work.

2        See, you can't live there.  So what are you going to

3   do?

4        What's he going to do, Mr. Cohen?

5        MR. COHEN:  Your Honor, accepting your comments about a

6   halfway house, possibly an alternative to what we've been

7   speaking about this morning would be what in State Court would

8   be considered a split sentence, three months of incarceration

9   followed by maybe three months in the halfway house.

10       THE COURT:  What do you think your guess is on what's

11  going to happen in State Court?

12       MR. COHEN:  Well, I think --

13       THE COURT:  There's nothing pending in State Court.

14       MR. COHEN:  Yes, there is.  There's still that case

15  that's set for trial on the 30th.

16       THE COURT:  Okay.  What do you think is going to happen

17  in busy County Court?

18       MR. COHEN:  So they may give him time served.  They may

19  give him some --

20       THE COURT:  They'll say Moreno gave him three months,

21  six months concurrent.  They'll even let him plead no contest.

22  Case is over.

23       MR. COHEN:  But by doing the three plus three, at least

24  it gives probation an opportunity to assist him in finding

25  housing, finding a job while he still has a place to stay.

Supervised Release Violation Hearing

1      THE COURT:  What do you mean three plus three?

2      MR. COHEN:  Well, what I suggested --

3      THE COURT:  Three months supervised release?

4      MR. COHEN:  Yes, three months supervised release

5  afterwards with a condition that he stay in the halfway house,

6  so he's able to search for a job, search for housing.

7      THE COURT:  But he won't do it, see?  They're gamblers.

8  Probation officers are gamblers.  They really are, but they're

9  always losing.

10      MR. COHEN:  Certainly, if he violates during those

11  three months, then we'll be right back here before Your Honor.

12      THE COURT:  And then what should I do, give him the

13  most that I can?

14      MR. COHEN:  Why don't we --

15      THE COURT:  Give him free room and board?

16      MR. COHEN:  Wait to see what happens.  Again, he went

17  two and a half years without any violations at all.

18      THE COURT:  Because they're so nice and lenient, that's

19  why.  By "they," I mean the probation officers.  Why do I have

20  two probation officers on one case?  It takes two experienced

21  probation officers to handle Mr. Mora.

22      See, it's not going to work, is it?

23      Okay.  That's why I get paid the big bucks.  I've got

24  to make a decision.

25      Anything else the probation officers want to say?

Supervised Release Violation Hearing

1   Prosecutor?

2           1ST PROBATION OFFICER:  No, Your Honor.

3           THE COURT:  Defense lawyer?

4           MR. COHEN:  No, thank you, Your Honor.

5           MR. ANTON:  No, Your Honor.

6           THE COURT:  Defendant, I always give you the next to

7   the last word, and I'll get the last word.  Anything else you

8   want to say?  The last thing you said is, well, how much --

9   remember when I was talking to you and saying, would you rather

10  do more time than paper time?

11          THE DEFENDANT:  Well, if it's going to be something

12  like --

13          THE COURT:  And you said, depends how much paper time,

14  which is a very logical, smart question.

15          THE DEFENDANT:  I mean --

16          THE COURT:  But I can't bargain with you.

17          THE DEFENDANT:  If it's going to be, you know, till --

18  my ending was going to be in March.

19          THE COURT:  I know, but I think I can extend it.  Let

20  me ask the probation officers, but I'm pretty sure.

21          I can revoke it and give him how much?

22          1ST PROBATION OFFICER:  Three years.

23          THE COURT:  Three years.  Look at that.  Three years is

24  like a lifetime, because they won't be nice and lenient, the

25  probation officers, anymore.

```
 1            And Mr. Cohen, he'll ask to be transferred to another
 2    division or something.
 3            So what would you rather do, more time and no
 4    supervision or less time and supervision, without knowing how
 5    much supervision?
 6            THE DEFENDANT:  That's the thing, I want to know how
 7    much supervision, because if you tell me, you know --
 8            THE COURT:  There's an old song, Que Sera Sera,
 9    Whatever Will Be, Will Be.  The future's not ours to see.  You
10    don't know.
11            THE DEFENDANT:  Yeah, no supervision.
12            THE COURT:  You just don't know.
13            THE DEFENDANT:  No supervision.
14            THE COURT:  I figured.  You agree with the probation
15    officer.  Okay.  Okay.
16            THE DEFENDANT:  Because it was -- I mean, that's what I
17    thought it was.  It was three months, no supervision.
18            THE COURT:  Well, remember, your lawyer was great
19    enough to convince the prosecutor.  The probation officers also
20    agree with no supervision.  But the person you can't bargain
21    with is me, though I probably spent more time talking with you
22    about this than most of my colleagues, except maybe the CARE
23    Court.
24            So anything else you want to say?
25            THE DEFENDANT:  That's it.
```

Supervised Release Violation Hearing

1      THE COURT:  All right.  After having heard from all

2  parties, I do think a sentence of incarceration is appropriate,

3  as I suggested before, it depends on whether you should have

4  supervised release, and what I am going to do is revoke your

5  supervised release.  I'm going to give you four months

6  incarceration, because you've admitted it, and then I'm going to

7  place you on supervised release for one year.

8      THE DEFENDANT:  One more year?  Wow.

9      THE COURT:  Yeah, one more year, but I'm going to make

10 a special condition of that supervised release that you cannot

11 live with your mother.  You can visit her with permission from

12 the Court.  So you've got to ask the probation officer.

13 Probation officer has to ask me, and they'll call the mother and

14 the sister and figure out.  It's kind of like a divorce.

15 Sometimes you've got to have neutral ground.  People who love

16 each other sometimes have to do that.  So for one year.

17      If you've done half of that time, your lawyer can ask

18 to terminate the supervised release.  You get a job and see if

19 they can help you get some housing or a halfway.

20      Any objections?

21      1ST PROBATION OFFICER:  I have some questions, Your

22 Honor.

23      THE COURT:  Oh, I figured you would, because I've made

24 everybody unhappy.  Because I'm thinking something could happen

25 in that neighborhood between the mother, the retired FBI agent,

Supervised Release Violation Hearing

1   the State Court judge.  Something is going to happen and I'm

2   worried about that.  I have actually more faith in you because I

3   think you're smart enough.

4           If you have any mental health issues, they are long

5   gone, if you haven't had any medication, but you've got to get a

6   job at 38.  There are lots of jobs, like you say, in logistics

7   as long as you know what you're carrying.

8           But you cannot live off your mom and your sister.  You

9   just can't.  Can't.

10          What are the questions?

11          1ST PROBATION OFFICER:  Your Honor, when you stated

12  that he cannot go visit his mom unless he has permission from

13  you --

14          THE COURT:  Yes.

15          1ST PROBATION OFFICER:  -- does that mean he cannot go

16  to the house or does that mean he cannot have any contact,

17  meaning they can't go to Pollo Tropical for lunch?  Do you know

18  what I'm saying?  Can they see each other at a third place?

19          THE COURT:  You know what?  At home, at the home.  The

20  home is where the problems are.

21          THE DEFENDANT:  Well, there is no problem.

22          THE COURT:  There is no home?

23          THE DEFENDANT:  No, there is no problem.  I mean, I've

24  lived there for 20 years.

25          THE COURT:  Well, you know, I think it's time that you

1    find your own place, and you agree with me.

2        1ST PROBATION OFFICER:  My other question is -- two

3    more questions.

4        THE COURT:  Okay.  No, if they want to meet at Pollo

5    Tropical -- because as long as he's not kidnapping her to Pollo

6    Tropical, right?  Because if it is, you are going to --

7        1ST PROBATION OFFICER:  Absolutely.

8        THE COURT:  And you know how quickly I sign warrants.

9        1ST PROBATION OFFICER:  Yes, sir.

10       Will you be also doing a special condition to place him

11   in the halfway house upon release from the Bureau of Prisons for

12   about 90 days?

13       THE COURT:  Don't they do that normally anyway?

14       1ST PROBATION OFFICER:  No, Your Honor.  He has a small

15   sentence of -- your sentence is four months.

16       THE COURT:  It's too short?

17       1ST PROBATION OFFICER:  Correct.

18       THE COURT:  I should have made it longer, but six

19   months, it wouldn't have made any difference.

20       1ST PROBATION OFFICER:  It would not make a difference.

21       THE COURT:  I know that.

22       1ST PROBATION OFFICER:  So we can request 90 days at

23   the RRC?

24       THE COURT:  At the what?

25       1ST PROBATION OFFICER:  At the Residential Reentry

Supervised Release Violation Hearing

1   Center, the halfway house.  That way he gets out of BOP custody

2   and is not homeless.  He can transition into the halfway house

3   for 90 days to give him time to get a job, save some money, and

4   stabilize.

5           THE COURT:  It makes sense.  But what do you think?

6   Doesn't that make sense?

7           THE DEFENDANT:  I think you should give me the six

8   months, no probation.

9           THE COURT:  Well --

10          THE DEFENDANT:  Sounds like a plan.

11          THE COURT:  But then I read about this in the

12   newspaper.

13          THE DEFENDANT:  I think that's the best choice.

14          THE COURT:  Probably.  I mean, I can understand why you

15   want to do that.

16          THE DEFENDANT:  I mean --

17          THE COURT:  You think you'll mess up at the halfway

18   house, right?

19          THE DEFENDANT:  Yep.  Honesty is the best policy.  I

20   don't want any probation.

21          THE COURT:  Not necessarily.  I like the Fifth

22   Amendment a lot.

23          THE DEFENDANT:  No probation is the best way.

24          THE COURT:  Apparently, a lot of people don't.  They

25   like the First Amendment a lot.  I know.

Supervised Release Violation Hearing

 1           1ST PROBATION OFFICER:  Your Honor, just so we are

 2    clear, the concern that I have is if he gets released from BOP

 3    custody --

 4           THE COURT:  I know.

 5           1ST PROBATION OFFICER:  -- and we call the homeless

 6    shelter and they don't have a bed, if they don't have a bed,

 7    then he will be out on the streets.

 8           THE COURT:  But then we have the Homeless Trust who

 9    finds a bed for everybody who wants one.

10           1ST PROBATION OFFICER:  They don't find it that same

11    day.  Sometimes you have to wait two to three weeks, Your Honor.

12           THE COURT:  Then what do you think is going to happen?

13    He's going to go home to momma?

14           1ST PROBATION OFFICER:  Correct, Your Honor.

15           THE COURT:  Against the rules.

16           1ST PROBATION OFFICER:  Correct.

17           THE DEFENDANT:  I mean, I don't know who made those

18    rules because --

19           THE COURT:  Well, I made the rule about not going to

20    see your mom at her house.

21           THE DEFENDANT:  Well, I could visit her, right?

22           THE COURT:  Because that's where all the problems are.

23           THE DEFENDANT:  We've never had problems.  This is the

24    only one.

25           THE COURT:  Well, the probation officers disagree.

Supervised Release Violation Hearing

1       THE DEFENDANT:  I think it's better that you give me as

2  much time as you want with no probation.

3       MR. COHEN:  Can we have a second, Your Honor?

4       THE COURT:  Don't tempt me.

5       THE DEFENDANT:  I don't want any probation.

6       THE COURT:  You know what the prosecutors used to say,

7  don't put that red cape in front of that Spanish bull because

8  he'll gore you.

9       THE DEFENDANT:  You said six months, no probation?

10      THE COURT:  Well, I already gave him that.  So I

11  couldn't give him more now, because then he would have an

12  appeal.

13      The appellate judges, some of them might have forgotten

14  what it's like to be here, and they are very smart and very

15  nice.

16      I don't know what the solution is.  We probably

17  shouldn't have scheduled this.  I thought this was going to be

18  an easy one, because I think all of you are right.  Something is

19  going to happen, and I don't know what the solution is.  But if

20  he's not going to make one day of the halfway house, it's kind

21  of ridiculous to make him do that.  It's just not going to work.

22  If he's going to get into trouble, I'm going to find out about

23  it.  If he wants to live on the streets, that's it, because if

24  he goes to his mom's house -- you'll be in violation of

25  supervised release and then I can give you not as much as I

1    want, but I can give you more time.  That's what I'm going to

2    do.

3              THE DEFENDANT:  Exactly.

4              THE COURT:  Do you understand?

5              THE DEFENDANT:  Yep.

6              THE COURT:  So that means when you get out, you go to

7    your mom's house, you're in violation.  How long have you been

8    in detention now?

9              THE DEFENDANT:  Two months.

10             THE COURT:  How is it?  I mean, you've been in a few

11   jails.  What do you think it's like at the Days Inn next door?

12             THE DEFENDANT:  It's normal.

13             THE COURT:  I used to call it the Hilton.

14             How is it compared --

15             THE DEFENDANT:  I haven't been over there in like 20

16   years, I mean, except for just a day or two that I was there.

17             THE COURT:  What, at the Dade County Jail?

18             THE DEFENDANT:  Yeah, that was like 20 years ago.

19             THE COURT:  Probably hasn't improved.

20             Well, I'm not going to do the 90 days because I'm

21   setting him up for failure.  Why go through all that paperwork

22   and then they file it?  But you can't go to your mom's house.

23   So that means while you are in jail, these four months, and you

24   get credit for the time you've served, you've got to figure out

25   where you're going to be.

Supervised Release Violation Hearing

1          THE DEFENDANT:  I'll figure that out.

2          THE COURT:  I don't know, but you can't go to your

3   mom's house.  Do you understand?

4          THE DEFENDANT:  Okay.

5          THE COURT:  Now that I've imposed the sentence, what

6   say the United States?

7          MR. ANTON:  Judge, I have no objection.  I would just

8   ask that since the defendant is going to be put back on

9   supervised release for the one-year period, that he be ordered

10  to stay away from Mr. Noel Gil, who's the neighbor, and we can

11  avoid that problem as well.

12         THE COURT:  I can add that, too.  Since you can't go --

13  you know what, you can't go within a quarter mile of your

14  mother's house.  How many blocks is that?

15         THE DEFENDANT:  How many what?

16         THE COURT:  What?  How many blocks is a quarter of a

17  mile?

18         THE DEFENDANT:  Oh, you mean I can't visit my mom at

19  all?

20         THE COURT:  You cannot visit your mom.  She can visit

21  you or you can have a Pollo Tropical or any other place that you

22  all choose.  Starbucks.  I mean, I'm not citing anything.  Any

23  establishment.  And you can talk about Santeria, Jehovah's

24  Witness, whatever you want.  You can have a theological

25  discussion or find out what are you going to do about yourself,

Supervised Release Violation Hearing

1    whatever you all want.  But you cannot be near.

2            What should I say, three blocks?  Is that better than a

3    quarter of a mile?

4            THE DEFENDANT:  No, just I can't go home, period.

5            THE COURT:  You cannot go home, but you can't go within

6    a block either.

7            THE DEFENDANT:  No, I know.  I'm not going to go over

8    there at all.

9            THE COURT:  Good.

10           What else?

11           1ST PROBATION OFFICER:  Will Your Honor also be

12    imposing all previously imposed conditions?

13           THE COURT:  Okay.  What are those?

14           1ST PROBATION OFFICER:  It had stay away from all

15    shopping centers, including Dadeland Mall, and mental health

16    treatment.  It was a modification.

17           THE COURT:  He says he doesn't need mental health

18    treatment.  He says he hasn't done any -- he hasn't been

19    prescribed anything for a year.

20           THE DEFENDANT:  I haven't even gone to a mall in like

21    three, four years.

22           1ST PROBATION OFFICER:  Except that he was actively

23    going to treatment.

24           THE COURT:  When was the last time?

25           THE DEFENDANT:  That finished in September.  That was

Supervised Release Violation Hearing

33

1    the last -- my last thing was in September.

2         1ST PROBATION OFFICER:  He was in treatment until the

3    day he was arrested, Your Honor.

4         THE DEFENDANT:  No.

5         THE COURT:  That's why it finished.

6         THE DEFENDANT:  No.  That's a lie.  It was until

7    September.

8         THE COURT:  Well, it's not a lie.  There might be a

9    mistake in the paperwork.  I don't know.  We shouldn't say that

10   so quickly.

11        Do you think people can get mental health treatment who

12   don't want mental health treatment who appear to be competent

13   who just don't want it?  I can't even get people to be

14   vaccinated who don't want it.  Do you think I can get him to

15   have mental health treatment?  What do I do?

16        1ST PROBATION OFFICER:  You don't have to order it.

17        THE COURT:  And stay away from Dadeland Mall?

18        1ST PROBATION OFFICER:  From all shopping centers,

19   including Dadeland Mall.  That was an original condition you had

20   ordered.

21        THE COURT:  What do you think?  You don't care anyway.

22   Everybody is doing their shopping by mail now and you don't have

23   any money anyway.  You've got to save.  So stay away from any

24   mall, including Dadeland Mall, Westland Mall.

25        Okay.  What else?

Supervised Release Violation Hearing

1   And the three blocks, let's make it three blocks from

2   your mother's house in any direction.

3   Any objections from the defense?

4   MR. COHEN:  No, Your Honor.  Thank you.

5   THE DEFENDANT:  So what is it going to be?  It's going

6   to be --

7   THE COURT:  Four months in jail, one year supervised

8   release.

9   THE DEFENDANT:  And the four months counts as a

10   supervised release?

11   THE COURT:  No.

12   THE DEFENDANT:  No?

13   THE COURT:  See, you could negotiate.

14   THE DEFENDANT:  Can we do the six months, no

15   supervision?

16   THE COURT:  Maybe you can work that out with the State

17   Court judge.  They're used to doing that kind of stuff.

18   THE DEFENDANT:  Yeah, because I don't want any

19   probation.

20   THE COURT:  I know.  You mess up, we get to see each

21   other.  I never forget my defendants and you're hard to forget.

22   Okay?

23   Come on, you've got to be serious.  You're going to go

24   into prison and then I'm going to give you more time.  It costs

25   too much money to do that.  It's not worth it.  All right?

```
 1              THE DEFENDANT:  All right.

 2              THE COURT:  You have 14 days to appeal.  Do you wish to

 3    appeal this sentence?

 4              THE DEFENDANT:  No.

 5              THE COURT:  You're happy with your lawyer?

 6              THE DEFENDANT:  Yep.

 7              THE COURT:  Has anyone forced you to give up the right

 8    to appeal?

 9              THE DEFENDANT:  No.

10              THE COURT:  I find that the waiver of appellate rights

11    was freely, voluntarily entered and that you're intelligent and

12    alert, represented by competent counsel.  Okay.

13              MR. ANTON:  Thank you, Judge.

14         (The hearing concluded at 10:45 a.m.:)

15

16                   C E R T I F I C A T E

17         I hereby certify that the foregoing is an accurate

18    transcription of proceedings in the above-entitled matter.

19

20    ____05-11-22____    _____
            Date                GILDA PASTOR-HERNANDEZ, RPR, FPR, FPR-C
21                              Official United States Court Reporter
                                Wilkie D. Ferguson Jr. U.S. Courthouse
22                              400 North Miami Avenue, Suite 12-2
                                Miami, Florida  33128      305-523-5118
23                              gphofficialreporter@gmail.com

24

25
```